# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

_____

№ 13-CV-3335 (JFB)(GRB)
_____

CHARLES MCCLINTON,

Plaintiff,

VERSUS

BILL HENDERSON, PAROLE OFFICER PENDARVIS, PAROLE OFFICER MASTRONARDI, PAROLE OFFICER TORRES, AND SENIOR PAROLE OFFICER ERICKSON,

Defendants.
_____

**MEMORANDUM AND ORDER**
May 19, 2014
_____

JOSEPH F. BIANCO, District Judge:

*Pro se* plaintiff Charles McClinton brings this 42 U.S.C. § 1983 action against defendants Parole Officer Bill Henderson ("Henderson"), Parole Officer Pendarvis ("Pendarvis"), Parole Officer Mastronardi ("Mastronardi"), Parole Officer Torres ("Torres"), and Senior Parole Officer Erickson ("Erickson") (collectively, "defendants"), alleging violations of his Fourth, Eighth, and Fourteenth Amendment rights in connection with his arrest and imprisonment for a parole violation in 2013. Plaintiff also apparently alleges that the revocation of his supervised release violates the Double Jeopardy and Ex Post Facto Clauses of the Constitution. He seeks damages and injunctive relief.

Defendants move to dismiss under Federal Rule of Civil Procedure 12(b)(6), arguing that the causes of action are barred on the basis of sovereign and qualified immunity, and because plaintiff has pleaded guilty to violating the conditions of his supervised release. For the following reasons, the Court grants the motion in its entirety. The Court also *sua sponte* dismisses the claim under the Double Jeopardy Clause and Ex Post Facto Clause.[1]

---

[1] On March 5, 2014, after the deadline for his opposition, plaintiff requested an extension of time to file his opposition, which the Court granted in an abundance of caution over defendants' objection. (*See* Docket Nos. 22–24.) In the Order granting the extension of time, the Court erroneously characterized defendants' pending motion as a motion for summary judgment. Subsequently, on March 14, 2014, plaintiff submitted a letter requesting an extension of time in order to procure affidavits from two individuals he claimed were witnesses to the facts at issue. (Docket No. 25.) On March 18, 2014, the Court granted that request and gave plaintiff until April 25, 2014, to file his opposition. The Court also clarified that the pending motion was a motion to dismiss brought under Rule 12 of the Federal Rules of Civil Procedure, not a motion for summary judgment brought under Rule 56, and included the relevant standard of review. (Docket No. 27.) In the interim, on March 17, but

1

## I. BACKGROUND

### A. Factual Background

The Court takes the following facts from the amended complaint, exhibits attached thereto, and judicially noticeable items.[2] These are not findings of fact by the Court; instead, the Court assumes these facts to be true for purposes of deciding the pending motion and construes them in a light most favorable to plaintiff, the non-moving party.

Defendants are state parole officers. (*See* Amended Complaint ("AC") ¶¶ 4–8.) On Friday, May 24, 2013, plaintiff was conditionally released from Fishkill Correctional Facility at approximately 1 p.m. (*Id.* ¶ 9.) He then headed to Suffolk County. (*Id.* ¶ 11.) Plaintiff alleges that he tried to reach the Suffolk County Department of Social Services ("DSS") and his parole officer, Pendarvis, throughout the day, but nobody answered. (*Id.* ¶ 12.) Plaintiff was told to call DSS in Hauppauge as part of his release conditions. (*See* Housing Resources, AC Ex. B (handwritten note).) On May 28, 2013, plaintiff was arrested at the parole office in Bohemia, New York, for failing to comply with the conditions of his release—contacting DSS in Hauppauge. (*See* AC ¶¶ 14–16.) Plaintiff claims the arrest was improper because, among other things, he tried to call DSS and the Bohemia office. (*Id.* ¶¶ 23–24.)

The Court notes, however, that the allegations are somewhat unclear. Plaintiff clearly acknowledges that he had to contact DSS and his parole officer.[3] (*E.g.*, *id.* ¶¶ 23–24.) However, plaintiff claims that defendants are liable because they were punishing him for sentences that he had completed years earlier. (*E.g.*, *id.* ¶ 25.) His causes of action thus sound in false arrest and cruel and unusual punishment. (*See id.* ¶¶ 16, 36, 37.) Plaintiff also alleges that defendants violated his rights under the Ex Post Facto Clause and the Double Jeopardy Clause. (*Id.* ¶ 36.)

At the preliminary violation hearing on June 3, 2013, plaintiff pleaded not guilty to the violation. (Preliminary Violation Hearing Decision and Summary, AC Ex. A.) During the hearing, the hearing officer found probable cause because plaintiff had failed to go to DSS for housing. (*Id.*) Further, the documentary evidence submitted by defendants—paperwork from the Division of Parole—demonstrates that plaintiff pleaded guilty to violating his post-release supervision sentence at his final parole revocation hearing on August 6, 2013, and he received a sentence of one year incarceration. (Parole Revocation Decision Notice, Declaration of Daniel S. Hallak ("Hallack Decl.") Ex. B, at 2.) The Parole Revocation Decision Notice states that

---

unbeknownst to the Court because the document was not docketed until March 19, plaintiff submitted a "Motion for Summary Judgment." (Docket No. 26.) Thus, the Court construes the March 17, 2014 filing as plaintiff's opposition to the motion to dismiss, which he also characterized as his opposition or "answer" to defendants' motion to dismiss. Plaintiff filed no further papers prior to April 25, 2014. To the extent plaintiff moves for summary judgment in connection with the opposition to the motion to dismiss, the summary judgment motion has no merit (because the case must be dismissed for the reasons set forth herein), and plaintiff's motion is denied.

[2] As noted *infra*, in considering a motion to dismiss, courts may take judicial notice of documents attached to, integral to, or referred to in the complaint, as well as documents filed in other courts and other public records. *See, e.g.*, *Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006); *Subaru Distribs. Corp. v. Subaru of Am., Inc.*, 425 F.3d 119, 122 (2d Cir. 2005).

[3] Plaintiff attaches a letter to this Court dated May 22, 2013, to his opposition, in which he informed the Court that he was to be released on May 24, 2013, on a "conditional release." (Letter, Opposition Ex. C.)

plaintiff failed to go to DSS for housing on May 24, 2013. (*Id.* at 3.)

B. Procedural Background

Plaintiff filed his complaint on June 5, 2013, and filed the amended complaint on July 16, 2013. Defendants requested a pre-motion conference on September 5, 2013. The Court granted the motion on December 9, 2013. Defendants moved to dismiss on January 2, 2014. Plaintiff's opposition was due by February 3, 2014. After the Court, in an abundance of caution, granted plaintiff an extension of time to oppose, plaintiff filed a motion for summary judgment on March 17, 2014, which the Court, as noted *supra*, shall construe as his opposition to the motion to dismiss. Defendants never replied.

II. STANDARD OF REVIEW

In reviewing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *See Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006); *Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 100 (2d Cir. 2005). "In order to survive a motion to dismiss under Rule 12(b)(6), a complaint must allege a plausible set of facts sufficient 'to raise a right to relief above the speculative level.'" *Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Mgmt. LLC*, 595 F.3d 86, 91 (2d Cir. 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). This standard does not require "heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

The Supreme Court clarified the appropriate pleading standard in *Ashcroft v. Iqbal*, setting forth a two-pronged approach for courts deciding a motion to dismiss. 556 U.S. 662 (2009). The Supreme Court instructed district courts to first "identify[ ] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679 (explaining that though "legal conclusions can provide the framework of a complaint, they must be supported by factual allegations"). Second, if a complaint contains "well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting and citing *Twombly*, 550 U.S. at 556–57 (internal citation omitted)).

Where, as here, the plaintiff is proceeding *pro se*, "[c]ourts are obliged to construe the [plaintiff's] pleadings . . . liberally." *McCluskey v. N.Y. State Unified Court Sys.*, No. 10–CV–2144 (JFB)(ETB), 2010 WL 2558624, at *8 (E.D.N.Y. June 17, 2010) (citing *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008); *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004)). Nonetheless, even though the Court construes a *pro se* complaint liberally, the complaint must still "state a claim to relief that is plausible on its face" to survive a motion to dismiss. *Mancuso v. Hynes*, 379 F. App'x 60, 61 (2d Cir. 2010) (quoting *Iqbal*, 556 U.S. at 678); *see also Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (applying *Twombly* and *Iqbal* to *pro se* complaint).

Further, in adjudicating a motion to dismiss, a court may consider: "(1) facts

alleged in the complaint and documents attached to it or incorporated in it by reference, (2) documents 'integral' to the complaint and relied upon in it, even if not attached or incorporated by reference, (3) documents or information contained in defendant's motion papers if plaintiff has knowledge or possession of the material and relied on it in framing the complaint, (4) public disclosure documents required by law to be, and that have been, filed with the Securities and Exchange Commission, and (5) facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence." *In re Merrill Lynch & Co.*, 273 F. Supp. 2d 351, 356–57 (S.D.N.Y. 2003).

### III. DISCUSSION

Plaintiff brings his claims pursuant to 42 U.S.C. § 1983. Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *Baker v. McCollan*, 443 U.S. 137, 145 n. 3 (1979). To prevail on a claim under § 1983, a plaintiff must prove that "(1) the challenged conduct was attributable at least in part to a person who was acting under color of state law and (2) the conduct deprived the plaintiff of a right guaranteed under the Constitution of the United States." *Snider v. Dylag*, 188 F.3d 51, 53 (2d Cir. 1999) (citation omitted). The parole officers argue that the claims are barred by sovereign and qualified immunity. They further argue that plaintiff cannot state any plausible claim because he pleaded guilty to violating the terms of his release. For the following reasons, the Court agrees with defendants, *sua sponte* addresses the claim under the Ex Post Facto and Double Jeopardy Clauses, and dismisses the complaint with prejudice.

### A. Sovereign Immunity

Defendants argue that the claims are barred by the Eleventh Amendment to the extent they are brought against defendants in their official capacities and for damages. The Court agrees.

The Eleventh Amendment to the United States Constitution provides:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const. amend. XI. "The reach of the Eleventh Amendment has . . . been interpreted to extend beyond the terms of its text to bar suits in federal courts against states, by their own citizens or by foreign sovereigns . . . ." *State Employees Bargaining Agent Coalition v. Rowland*, 494 F.3d 71, 95 (2d Cir. 2007) (quoting *Mohegan Tribe & Nation v. Orange Cnty.*, 395 F.3d 18, 20 (2d Cir. 2004)) (alterations in original). Thus, absent a state's consent to suit or an express statutory waiver, the Eleventh Amendment bars federal court claims against states. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989). Eleventh Amendment immunity also extends to suits for damages against state officers in their official capacities. *See id.* at 71 ("[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself." (internal citation omitted)); *McNamara v. Kaye*, No. 06–CV–5169 (DLI)(CLP), 2008 WL 3836024, at *8 (E.D.N.Y. Aug. 13, 2008) ("[L]awsuits against state officers acting [in] their official capacity and lawsuits against

state courts are considered to be lawsuits against the state.").

New York State has not waived its immunity and there has been no statutory waiver. *See, e.g.*, *Marmot v. Bd. of Regents*, 367 F. App'x 191, 192 (2d Cir. 2010) ("It is well-established that New York has not consented to § 1983 suits in federal court . . . ."). Moreover, the Division of Parole is a state agency entitled to Eleventh Amendment immunity. *See Chapman v. New York*, No. 11–CV–1814 (ENV) (LB), 2011 WL 4244209, at *2 (E.D.N.Y Sept. 14, 2011) (dismissing claims against New York and New York State Division of Parole on Eleventh Amendment immunity grounds) (citing *McCloud v. Jackson*, 4 F. App'x 7, 10 (2d Cir. 2001)). Thus, to the extent plaintiff is suing the state parole officers for damages in their official capacity, the claims must be dismissed with prejudice because defendants are entitled to Eleventh Amendment immunity. *Will*, 491 U.S. at 71.

B. <u>Plaintiff Pleaded Guilty to the Parole Violation</u>

Defendants argue that the complaint must be dismissed because (1) plaintiff pleaded guilty to the underlying crimes that led to his initial confinement and admitted that he violated the terms of his post-release supervision, and, therefore, he cannot satisfy the standard in *Heck v. Humphrey*, 512 U.S. 477 (1994); and (2) incarceration alone does not constitute cruel and unusual punishment. The Court agrees.[4] The Court also *sua sponte* dismisses the claim under the Ex Post Facto and Double Jeopardy Clauses.

1. False Arrest Claim

"Claims for false arrest or malicious prosecution, brought under § 1983 to vindicate the Fourth and Fourteenth Amendment right to be free from unreasonable seizures, are 'substantially the same' as claims for false arrest or malicious prosecution under state law." *Jocks v. Tavernier*, 316 F.3d 128, 134 (2d Cir. 2003) (citing *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996) (false arrest); *Conway v. Vill. of Mount Kisco*, 750 F.2d 205, 214 (2d Cir. 1984) (malicious prosecution)). Under New York law, the elements of a false arrest claim are: (1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged. *Weyant*, 101 F.3d at 853. "Furthermore, when an arrest is made without a warrant, the officer has acted outside the scope of the legal process and therefore a rebuttable presumption arises that such an arrest is unlawful. The defendant has the burden of raising and proving the affirmative defense of probable cause." *Rodriguez v. City of New York*, 563 N.Y.S.2d 1004, 1005 (N.Y. Sup. Ct. 1990) (citing *Broughton v. State*, 37 N.Y.2d 451, 458 (1975)). Probable cause is "a complete defense to a cause of action for false arrest." *Feinberg v. Saks & Co.*, 56 N.Y.2d 206, 210 (1982).

In *Heck*, the Supreme Court "confronted the question of whether, given the overlap between § 1983 and the federal habeas corpus statute, a prisoner seeking civil damages may proceed with a § 1983 claim where success on the claim necessarily would implicate the unconstitutionality of the prisoner's conviction or sentence."

---

[4] In the alternative, defendants argue they are entitled to qualified immunity on these claims because, at the least, the officers had probable cause and plaintiff pleaded guilty to the parole violation. (Motion Br., at 8–12.) As set forth below, the Court concludes that plaintiff's claims are without merit, and thus, the Court need not address whether defendants are entitled to qualified immunity as well.

5

*Amaker v. Weiner*, 179 F.3d 48, 51 (2d Cir. 1999) (citing *Heck*, 512 U.S. at 480–90). The Supreme Court in that case explained:

> We hold that, in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983. Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.

512 U.S. at 486–87 (footnote omitted) (emphasis in original); *see also Wilkinson v. Dotson*, 544 U.S. 74, 81 (2005) ("*Heck* specifies that a prisoner cannot use § 1983 to obtain damages where success would necessarily imply the unlawfulness of a (not previously invalidated) conviction or sentence." (emphasis in original)). Thus, pursuant to *Heck*, courts routinely dismiss claims brought under Section 1983 when such claims bear on the validity of an underlying conviction or sentence. *See, e.g.*, *Guerrero v. Gates*, 442 F.3d 697, 703–04 (9th Cir. 2006) (holding that *Heck* bars plaintiff's § 1983 claims of wrongful arrest, malicious prosecution, and conspiracy); *Amaker*, 179 F.3d at 51–52 (holding that *Heck* applies to Section 1983 conspiracy); *Perez v. Cuomo*, No. 09 Civ. 1109 (SLT), 2009 WL 1046137, at *7 (E.D.N.Y. Apr. 20, 2009) ("A § 1983 claim for the violation of the due process right to a fair trial is, in essence, a claim for damages attributable to an unconstitutional conviction. . . . Since plaintiff's conviction remains valid, plaintiff's claim for violation of his right to a fair trial is not cognizable under § 1983, and must be dismissed as to all defendants[.]" (internal quotation marks and citations omitted)); *Younger v. City of New York*, 480 F. Supp. 2d 723, 730 (S.D.N.Y. 2007) (holding that plaintiff's claims for false arrest/imprisonment and malicious prosecution were barred by his plea of guilty pursuant to *Heck*); *cf. Jovanovic v. City of New York*, No. 04 Civ. 8437 (PAC), 2006 WL 2411541, at *12 (S.D.N.Y. Aug. 17, 2006) (applying *Heck* to a Section 1983 claim for denial of the right to a fair trial in the context of a statute of limitations issue). Courts also hold that *Heck* applies to § 1983 actions that challenge the fact or duration of confinement based on the revocation of parole. *Davis v. Cotov*, 214 F. Supp. 2d 310, 316 (E.D.N.Y. 2002) (citing cases).

Plaintiff claims he was falsely arrested on May 28, 2013, four days after he was mandated to report to DSS pursuant to the conditions of his post-release supervision. (*See* AC ¶¶ 16–25, AC Ex. B.) The fact that plaintiff did not report to DSS for four days after he was mandated constitutes probable cause to charge him with a violation of the terms of his release, absolving defendants of any liability. Moreover, defendants have submitted documentation from parole (which plaintiff does not contest or dispute) demonstrating that plaintiff pleaded guilty to

the violation at his final revocation hearing in August 2013.[5] Therefore, the false arrest claim is barred by *Heck* because it challenges the validity of the parole revocation, which plaintiff has failed to prove has been reversed, expunged, or declared invalid.[6] *Heck*, 512 U.S. at 486–87.

Accordingly, the Court grants defendants' motion to dismiss the Section 1983 claim.[7]

2. Cruel and Unusual Punishment Claim

Plaintiff also alleges an Eighth Amendment violation. "Incarceration does not constitute cruel and unusual punishment. Rather, after incarceration, only the 'unnecessary and wanton infliction of pain,' constitutes cruel and unusual punishment." *Gill v. Stella*, 845 F. Supp. 94, 102

---

[5] The Court may take judicial notice of the fact that McClinton pleaded guilty of violating the terms of his release. *See, e.g.*, *Davis*, 214 F. Supp. 2d at 315–16 (taking judicial notice of fact that plaintiff was found guilty of violating parole because fact was not subject to reasonable dispute, and appeal decision notice was public document).

[6] The Second Circuit, sitting en banc, recently addressed the scope of *Heck* in *Poventud v. City of New York*, — F.3d —, 2014 WL 182313 (2d Cir. Jan. 16, 2014). In that case, the plaintiff had successfully brought a state collateral challenge to a murder conviction based on *Brady v. Maryland*, 373 U.S. 83 (1963). *Id.* at *1. While prosecutors considered appealing the reversal of the conviction, the plaintiff pleaded guilty to a lesser charge of attempted robbery in the third degree and stipulated to a one-year sentence. *Id.* Thereafter, he sued the City of New York and various police officers alleging a violation of his constitutional rights in the murder trial. *Id.* His § 1983 claim centered on the state court's determination that he was denied access to evidence in the government's possession that had a reasonable probability of affecting the result of his trial. *Id.* The en banc Second Circuit panel held that the plaintiff's plea did not preclude him from seeking damages from those he accused of violating his right to a fair trial. The court emphasized that "[n]ot every § 1983 claim that arises out of a criminal case requires that the underlying criminal process reach a favorable termination." *Id.* at *8; *see also Van Gilder v. Baker*, 435 F.3d 689, 692 (7th Cir. 2006) ("Contrary to the district court's view in this case, *Heck* does not automatically bar a § 1983 claim simply because the processes of the criminal justice system did not end up in the plaintiff's favor. A plaintiff need not prove that any conviction stemming from an incident with the police has been invalidated, only a conviction that could not be reconciled with the claims of his civil action." (emphasis retained, internal quotation marks and alterations omitted)). The court then concluded that the district court erred in granting summary judgment to the defendants because it treated the plaintiff's case as a malicious prosecution claim and did not recognize that the plaintiff's *Brady* claim is compatible with the validity of his subsequent conviction, so long as it was limited to this 1998 trial and conviction and not the guilty plea. *See* 2014 WL 182313, at *8–13. *Poventud*, therefore, has no impact on this Court's analysis here. Plaintiff's complaint is based on his belief that he was wrongly arrested for a parole violation. Thus, *Heck*'s core concern of finality would be undercut if plaintiff succeeds on the merits here. Therefore, his claims are *Heck*-barred and do not fall within the *Poventud* exception.

[7] In addition, defendants argue that to the extent plaintiff alleges a due process violation during his preliminary revocation hearing, such suits also are barred based on *Heck*. The Court agrees; even as a separate § 1983 claim, the due process claim fails under *Heck*. *See Archer v. Fischer*, 325 F. App'x 9, 10 (2d Cir. 2009) ("The Supreme Court, in *Edwards*, rejected the distinction between claiming an improper procedure and claiming an improper result, because 'it disregards the possibility, clearly envisioned by Heck, that the nature of the challenge to the procedures could be such as necessarily to imply the invalidity of the judgment.' The Supreme Court concluded that because the principal procedural defect complained of by Edwards 'would, if established, necessarily imply the invalidity of the deprivation of his good-time credits,' Edwards' suit was not cognizable under section 1983." (quoting *Edwards v. Balisok*, 520 U.S. 641, 645–49 (1997))). Defendants also argue that, to the extent plaintiff alleges a § 1983 conspiracy, the claim must be dismissed. The Court agrees. *Heck* "applies with respect not only to plaintiff's § 1983 claim but also to [any] §§ 1981, 1985(3) and 1986 claims" because the existence of a conspiracy would necessarily question the validity of plaintiff's conviction. *Amaker*, 179 F.3d at 52.

(E.D.N.Y. 1994) (quoting *Ingraham v. Wright*, 430 U.S. 651, 670 (1977)). Further, "courts have uniformly observed that state imposed sentences which fall within the prescribed ranges of penalties for the crimes of conviction do not implicate the cruel and unusual punishment provision of the Eighth Amendment." *Farid v. Bouey*, 554 F. Supp. 2d 301, 323 (N.D.N.Y. 2008) (citing *White v. Keane*, 969 F.2d 1381, 1383 (2d Cir. 1992)). Plaintiff alleges no actionable cruel and unusual punishment. Rather, even liberally construing the allegations, it appears that he claims that the fact of his incarceration for the parole violation is the cruel and unusual punishment. (*See* AC ¶¶ 36–37.) This is insufficient as a matter of law. *See Gill*, 845 F. Supp. at 102. The Court also notes that none of the defendants work at the correctional facility where plaintiff is incarcerated. Accordingly, the Court grants the motion to dismiss the cruel and unusual punishment claim.

3. Ex Post Facto Clause and Double Jeopardy Clause Claim

Plaintiff appears to allege that his incarceration violates the Ex Post Facto Clause and the Double Jeopardy Clause (*see* AC ¶ 36), although he does not specifically state why this is so. Defendants do not address this claim. Nevertheless, the Court shall *sua sponte* consider the issue because a district court is required to dismiss an *in forma pauperis* complaint if the action is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. *See* 28 U.S.C. § 1915(e)(2)(B)(i–iii); *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007).

First, among the protections afforded by the Constitution is the prohibition against a state passing any ex post facto law. *See* U.S. Const. art. I, § 10. Under this provision, laws which "retroactively alter the definition of crimes or increase the punishment for criminal acts" are prohibited. *Collins v. Youngblood*, 497 U.S. 37, 43 (1990). The type of retroactive legislation proscribed under that provision is materially distinguishable from plaintiff's circumstances. He is challenging an incarceration for violating the terms of his post-release supervision. Nothing indicates that his exposure to that sanction is the result of any change in law or other intervening event between his conviction, sentencing, incarceration, or release. Thus, the claim must be dismissed because nothing has "retroactively . . . increase[d] the punishment for" plaintiff's underlying crimes. *Collins*, 497 U.S. at 43; *cf. Johnson v. United States*, 529 U.S. 694, 700–01 (2000) (treating postrevocation sanctions as part of penalty for initial offense and rejecting application of *ex post facto* clause in such circumstances).

Second, the Double Jeopardy Clause protects an individual's right not to be "subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V, cl. 2. It prohibits both the second prosecution of a defendant for the same offense after an acquittal or a conviction and the imposition of multiple punishments for the same offense. *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969), *overruled on other grounds*, *Alabama v. Smith*, 490 U.S. 794 (1989). In this case, plaintiff is incarcerated for violating the terms of his parole, which is part of the sentence which was duly imposed in connection with his criminal conviction. Nothing indicates that plaintiff is being imprisoned a second time for the underlying conviction itself. Therefore, plaintiff has not stated a claim under the Double Jeopardy Clause.

Accordingly, the Court *sua sponte* dismisses plaintiff's claim under the Ex Post Facto and Double Jeopardy Clauses.

### C. Frequent Filings

Defendants request that the Court require plaintiff to seek permission prior to commencing any further lawsuits arising from the incidents which form the basis of the instant lawsuits that are the subject of this motion. (Motion Br., at 12–13.)

Under the All Writs Act, district courts are empowered to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). The Court is obligated "to protect the public and the efficient administration of justice from litigants who have a history of filing vexatious and harassing complaints because of the needless expense imposed on the parties and the unnecessary burden on the court." *Morse v. Network of Al-Queda Attorneys*, No. 12-CV-1102, 2012 WL 1155821, *6 (E.D.N.Y. Apr. 5, 2012) (citing *Lau v. Meddaugh*, 229 F.3d 121, 123 (2d Cir. 2000)).

The All Writs Act "grants district courts the power, under certain circumstances, to enjoin parties from filing further lawsuits." *MLE Realty Assocs. v. Handler*, 192 F.3d 259, 261 (2d Cir. 1999); *Smith v. The Educ. People, Inc.*, Nos. 05-2971, 05-6863, 2008 WL 749564, *2 (2d Cir. Mar. 20, 2008) (affirming order enjoining the filing of further, duplicative actions by plaintiff because it is within the Court's discretion under the All Writs Act "to effectuate and protect its judgment and to prevent vexatious litigation."). Those circumstances include cases where litigants engage in the filing of repetitive and frivolous lawsuits. *See Malley v. N.Y.C. Bd. of Educ.*, 112 F.3d 69 (2d Cir. 1997) (per curiam). Such an injunction should be narrowly tailored so as to preserve the right of access to the court, and the court must first provide a litigant with notice and an opportunity to be heard before imposing a filing injunction. *Robert v. Dep't of Justice*, 439 F. App'x 32, 34–35 (2d Cir. 2011); *see also MLE Realty*, 192 F.3d at 261; *Moates v. Barkley*, 147 F.3d 207, 208 (2d Cir. 1998) (per curiam).

Plaintiff is no stranger to this Court. He has filed numerous related complaints in the past two years. *See* Docket Nos. 2:12-cv-3777 (JFB)(GRB), 2:12-cv-3949 (JFB)(GRB), 2:12-cv-4992 (JFB)(GRB), 2:12-cv-5283 (JFB), 2:13-cv-2633 (JFB)(GRB), 2:13-cv-2629 (JFB)(GRB), 2:13-cv-3673 (JFB)(GRB). On November 21, 2012, this Court consolidated several of these actions under Docket No. 2:12-cv-3777. The cases under 2:13-cv-2633 and 2:12-cv-2629 were dismissed on July 2, 2013, for failure to prosecute. Nevertheless, the Court does not believe that the drastic sanction of a filing injunction, or any other sanction, is warranted at this juncture. The Court and the parties have not expended significant resources in addressing or defending this motion. The Court is concerned, however, given the instant action and plaintiff's history of frequent filing, that plaintiff may try to file a new action against these defendants based on the incidents that form the basis of his pending lawsuits. Given the Court's "obligation to protect the public and the efficient administration of justice from individuals who have a history of litigation entailing vexation, harassment and needless expense to other parties and an unnecessary burden on the courts and their supporting personnel," *Lau*, 229 F.3d at 123 (internal brackets omitted), plaintiff is warned that similar, future actions will not be tolerated. If plaintiff persists in this course of action, the Court will require that he show cause why leave of the Court should not be sought before submitting such filings pursuant to the All Writs Act.

Finally, plaintiff is cautioned that Federal Rule of Civil Procedure 11 applies to *pro se* litigants, *Ginther v. Provident Life & Cas. Ins. Co.*, 350 F. App'x 494, 496 (2d Cir. 2009) (upholding court's imposition of sanctions against *pro se* litigant), and that, should plaintiff file another frivolous action, it is within the Court's realm to consider sanctions. *See* Fed. R. Civ. P. 11.

IV. CONCLUSION

For the foregoing reasons, the Court grants the motion to dismiss in its entirety. The Court has considered affording plaintiff an opportunity to amend the complaint, *Foman v. Davis*, 371 U.S. 178, 182 (1962), but declines to do so because the deficiencies noted above could not be cured by an amendment for the reasons discussed herein. *See O'Hara v. Weeks Marine, Inc.*, 294 F.3d 55, 69 (2d Cir. 2002). Therefore, the dismissal is with prejudice. The Clerk of the Court shall enter judgment accordingly and close this case. The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Memorandum and Order would not be taken in good faith and, therefore, *in forma pauperis* status is denied for purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: May 19, 2014
Central Islip, NY

\*\*\*

Plaintiff proceeds *pro se*. Defendants are represented by Eric T. Shniederman, Attorney General of the State of New York, by Daniel Scott Hallak, Assistant Attorney General, 300 Motor Parkway, Suite 230, Hauppauge, NY 11788.